**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

| | |
|---|---|
| SAMUEL M. LUZINGU, <br><br> Plaintiff, <br><br> v. <br><br> ABBOTT LABORATORIES, INC., <br><br> Defendant. | Case No. 2:25-cv-00523-LEW |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION**
**TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

## INTRODUCTION

Plaintiff's opposition fails to meaningfully respond to any substantive argument in Abbott's Opening Brief. Instead, it primarily focuses on personal circumstances and convenience to avoid enforcement of Plaintiff's presumptively valid forum selection clause ("FSC"). The opposition therefore effectively concedes that if this Court finds the FSC valid, it must be enforced. As set forth below and in the Opening Brief, Plaintiff simply has not met his substantial burden to overcome the strong presumption that the FSC is valid and enforceable under controlling First Circuit precedent.

## I.    *BREMEN* SUPPORTS ENFORCEMENT OF THE FSC

Plaintiff erroneously argues that Abbott "leapfrogged" an analysis of the "*Bremen* factors," and as a result, waived its arguments regarding the validity of the FSC. Plaintiff misconstrues *M/S Bremen v. Zapata Off-Shore Co.*, under which, FSCs are presumptively valid unless the opposing party meets a heavy burden to prove otherwise. 407 U.S. 1, 17-18 (1972). There was no waiver. And Plaintiff's validity argument fails.

### A.    Abbott Has Not Waived Arguments Regarding the Validity of the FSC.

Plaintiff does not and cannot cite to any authority supporting the notion that Defendant was required to anticipate his opposition regarding the validity of the FSC and that failure to do so resulted in waiver. The terminal flaw in Plaintiff's argument is his failure to appreciate that FSCs are presumptively valid and must be enforced unless the opposing party proves enforcement would be unreasonable under the circumstances. *Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 48 (1st Cir. 2014) (citing *Rafael Rodriguez Barril, Inc. v. Conbraco Indus., Inc.*, 619 F.3d 90, 93 (1st Cir. 2010); *Bremen*, 407 U.S. at 10). It was therefore Plaintiff's burden in opposition – not Defendant's burden in moving – to address such a defense.

Plaintiff's waiver argument also fails because, while Abbott was not *required* to predict and address Plaintiff's *Bremen* arguments, *Abbott did so* in Section II(C) of the Opening Brief.

Indeed, Abbott addressed the "four arguments" that Plaintiff previewed (without evidence) in his Complaint "as to why enforcement of the forum selection clause would be unreasonable," and concluded that the "parties' forum selection clause is valid and enforceable." Abbott specifically addressed Plaintiff's arguments relating to fraud and overreaching, unconscionability and adequacy of consideration, Title VII's "special venue" provision, and Plaintiff's private interests. ECF No. 7, (Opening Brief), at 9-13. These are the arguments that Plaintiff has raised under *Bremen*. Thus, Plaintiff's waiver argument fails on multiple levels.

Critically, it is actually Plaintiff who has waived arguments because he failed to address Abbott's arguments in his Opposition. *See Rivera-Huertas v. Commonwealth*, 212 F. App'x 1, 4 (1st Cir. 2006) (rejecting argument not raised in opposition to motion to dismiss).

**B.     The FSC is Presumptively Valid and Plaintiff Has Failed to Overcome His Heavy Burden of Proving Otherwise.**

An application of *Bremen* and its progeny demonstrates that Plaintiff cannot avoid the venue to which he agreed. As discussed in the Opening Brief, after having established that a forum selection clause is mandatory and its scope covers the claims at issue – as is the case here – the final step in evaluating the FSC involves asking "whether there is some reason the presumption of enforceability should not apply." [1] *Claudio-De Leon*, 775 F.3d at 48 (citation omitted).[2] There are four grounds for finding an FSC invalid: (1) the clause was the product of "fraud or overreaching"; (2) enforcement "would be unreasonable and unjust"; (3) proceeding in the contractual forum would be "so gravely difficult and inconvenient that [the plaintiff] will for all practical purposes be deprived of his day in court"; and (4) "enforcement would contravene a strong public policy of

---

[1] Plaintiff argues, citing to an Eleventh Circuit decision, that the *Bremen* analysis should be conducted first, as a threshold issue (ECF No. 18, (Opp.), at 1), whereas the First Circuit applies the *Bremen* factors last, after applying the *Atlantic Marine* test. *Claudio-De Leon*, 775 F.3d at 48-49. In light of the First Circuit precedent on this issue, this Court should not adopt the Eleventh Circuit's framework. However, regardless of the sequence of the Court's analyses, the FSC here is valid and enforceable as described herein and in the Opening Brief.

[2] As noted *supra*, "[a] forum selection clause is 'prima facie valid' and, absent a 'strong showing' by the resisting party that the clause is 'unreasonable under the circumstances,' it should not be set aside." *Claudio-De Leon*, 775 F.3d at 48 (citing *Bremen,* 407 U.S. at 10).

the forum in which suit is brought." *Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 33 (1st Cir. 2022) (citations omitted); *Bremen*, 407 U.S. at 10-15. However, a "party arguing that [an FSC] is inapplicable 'bear[s] a heavy burden of proof[.]'" *Claudio-De Leon,* 775 F.3d at 48 (quoting *Bremen,* 407 U.S. at 17); *In re Mercurio,* 402 F.3d 62, 66 (1st Cir. 2005). Absent such a showing, the FSC is "presumptively enforceable." *Claudio-De Leon,* 775 F.3d at 48-49. Plaintiff has not met his "heavy" burden of proof here.

### 1. Plaintiff's Claims of Fraud or Overreaching Lack Merit.

Plaintiff has not demonstrated that the FSC was the result of fraud or overreaching. First, he does not claim there was fraud. He does not claim that anyone lied to him about any fact, material or otherwise. As for overreaching, he grounds his argument by claiming that Abbott had "superior bargaining power" (an argument this Court already addressed and rejected in *Mayhew* and *Campinell*) and he signed the Agreement without understanding its terms.[3] Opp. at 16-17. These allegations are contradicted by Plaintiff's express contractual admission that he had "sufficient advance notice" of the Agreement, and that he "had the opportunity to seek the advice of legal counsel before entering into [the] Agreement." Declaration of Erika Douglass, ECF No. 7-1, ("Douglass Decl."), Ex. 1 ¶ 23. He further certified that he entered into the Agreement willingly and with full knowledge of its terms. *Id.* He ignores these undisputable facts. Plaintiff cannot now claim that he did not understand what he was signing, or that the Agreement was somehow the result of undue influence.[4] *See Navman Wireless N. Am., Ltd. v. Texas Oilfield Servs., LLC*, No. 16 C 11356, 2017 WL 1199751, at *2 (N.D. Ill. Mar. 30, 2017) (quoting *Betaco, Inc. v. Cessna Aircraft Co.*, 32 F.3d 1126, 1136 (7th Cir. 1994)) ("[A] contracting party is under a duty to learn the contents of a written contract before signing it. . . . [and] is bound by its terms regardless

---

[3] Despite his initial claim that he "does not recall whether he" executed the Agreement (ECF No. 1, ¶ 68), his Declaration curiously offers specific details of the process by which he in fact executed it—without explaining his newfound and pristine memory. Declaration of Samuel Luzingu, ECF No. 18-1, ("Pl. Decl."), ¶¶ 25-31.

[4] Plaintiff fails to explain how plain terms like "exclusive jurisdiction" or "laying of venue" were beyond his or the "average" Abbott employee's understanding, much less why he was unable to inquire or consult with counsel before execution.

3

of his or her failure to read and understand its terms"). Even if he could, Plaintiff's affidavit does not claim he lacked sufficient knowledge of the English language each time he signed the Agreement, and represented that he understood the Agreement and signed it voluntarily after sufficient opportunity to review and consult counsel.

Further, Plaintiff signed the Agreement on *three separate occasions* over an 11-month span (Douglass Decl. ¶ 9), which undermines his allegation that he did not have a "reasonable opportunity to understand the terms of the [FSC]" or seek counsel about it. Opp. at 18. When he signed, he was aware of and had the opportunity to consider the time and costs associated with litigating in Illinois. He nonetheless decided to pursue the position at Abbott anyway. Pl. Decl. ¶ 31. No one forced his hand. "That [Plaintiff] may now be suffering buyer's remorse about the forum to which [he] agreed is not a sufficient reason for denying enforcement of a valid [FSC]." *Amyndas Pharms., S.A.,* 48 F.4th at 34.

### 2. Enforcing the Forum Selection Clause Would Neither Violate Public Policy Nor Be Unreasonable or Unjust.

Enforcing the FSC would not violate any public policy. To the contrary, "[t]he presumptive enforceability of forum selection clauses reflects a strong federal policy of its own." *Martinez v. Bloomberg LP*, 740 F.3d 211, 218 (2d Cir. 2014). Nor would enforcement be unreasonable and unjust, much less both. Again, Plaintiff does not allege fraudulent inducement, and there is no indication that Abbott chose Illinois as a bad faith means of discouraging employees from bringing suit. Abbott is headquartered in Illinois, is a Northern District of Illinois resident, and maintains all relevant records in Illinois, along with a significant employee population there. Douglass Decl. ¶ 3; *see Rafael Rodriguez Barril, Inc.*, 619 F.3d at 93 (rejecting argument that enforcement of North Carolina forum selection clause would be "unreasonable or unjust" where employer was based in North Carolina and there was no indication that FSC was inserted in bad faith). Further, as Plaintiff concedes, he received notice of and retained the option to reject the FSC. Pl. Decl. ¶¶

25-31; *see Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991) (enforcing FSC where moving party was based in selected forum and opposing party had freedom to reject agreement).

Plaintiff argues that the FSC should be invalidated because litigating in Illinois would prevent him from leading church services, purportedly burdening both his and his parishioners' free-exercise rights. Opp. at 8-12. That argument fails as a matter of law. Putting aside that it is unclear how litigating in Illinois would practically burden free-exercise rights[5], Abbott is a private employer, and enforcement of a contractual forum selection clause simply cannot constitute state action capable of violating constitutional rights.[6] *Tynecki v. Tufts Univ. Sch. of Dental Med.*, 875 F. Supp. 26, 30 n.5 (D. Mass. 1994) (citing *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982)) ("The Supreme Court has long held that the [U.S.] Constitution applies only to actions by governments and their employees"). Moreover, it is axiomatic that Plaintiff lacks standing to assert constitutional claims on behalf of his parishioners or any other third party. *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Even more fundamentally, Plaintiff ignores the realities of modern-day litigation and exaggerates the extent to which he will need to travel to Illinois. Abbott intends to conduct Plaintiff's deposition in Maine. If Plaintiff chooses to attend any pre-trial court hearings, which he is not required to do, he may request the Court's permission to attend remotely (which Abbott would not oppose). The only foreseeable event for which Plaintiff would be required to travel to Illinois would be trial. But, whether in Illinois or Maine, a week-long trial would require his full attention. Trial days are spent in court and evenings are spent in preparation for the next day. He would not be able to perform his regular job duties regardless of location or vocation. If

---

[5]Among other reasons, Plaintiff live streams his sermons and is thus entirely capable of leading a service remotely. *See* Rhema Maine Tv (Pasteur Samuel Luzingu), https://www.youtube.com/channel/UCBGj3-Kl24pJeVToAmU4PVg (Past live streams).

[6] The MCRA (*see* Opp. at 11-12) is inapplicable here. Plaintiff has not brought an MCRA claim, nor could he. There is no allegation that Abbott engaged in threats of violence against Plaintiff or otherwise intentionally attempted to interfere with his rights. Enforcing a duly executed FSC and causing a plaintiff to spend a modest amount of time in Chicago for trial (as he would have to do in Maine) would not cause a reasonable person to suffer emotional distress. *See* 5 M.R.S. § 4682(1-A)(B).

emergencies arise that require attention to parishioners in the evenings, which others cannot manage, modern communication technology makes that simple.[7] And, just like Plaintiff could anticipate the impact of litigation in Illinois when he signed the Agreement, he could anticipate the impact of litigation in Illinois when he chose to remove himself from the job market for employment comparable to that which he performed at Abbott and pursued a different vocation. At bottom, even if the temporary and small impact to Plaintiff's schedule were a permissible consideration, it would not defeat the strong presumption that the FSC is valid.

Finally, Plaintiff argues that enforcing the FSC would be unreasonable due to Title VII's "special venue" provision. Opp. at 13. Abbott addressed this argument in its Opening Brief (*see* pp. 10-13), and this Court already rejected this argument in *Mayhew* and *Campinell*.[8] Further, the cases to which Plaintiff cites on this argument (*see* Opp. at 13-15 n.5) are inapposite. They were decided before and/or did not incorporate *Atlantic Marine's* directive that "[FSCs] should control except in unusual cases" not presented here. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 64 (2013).

### 3. Plaintiff Has Not Demonstrated that Litigating In Illinois Would Be So Gravely Difficult that He Would Be Deprived of His Day in Court.

As discussed in the Opening Brief, and further above, Plaintiff has not demonstrated that proceeding in Illinois would be so "gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Bremen,* 407 U.S. at 18. Under controlling law, Plaintiff's private interests, including financial and convenience concerns (*see* Opp. at 19-21), were "wholly foreseeable at the time [he] signed the [Agreement][9] and, thus, [his] private

---

[7] Plaintiff claims that he is the "sole ministerial pastor" of his church. Opp. at 9-10. A review of the church's website (https://rccmchurch.org/our-team/) identifies four other Pastors on staff, as well as two Evangelists, a Worship Leader, and a Bishop, among numerous other staff.

[8] Likewise, Abbott already addressed, and this Court already rejected, Plaintiff's arguments (Opp. at 18-19, 21-24) that the FSC is "unconscionable" or "illusory." Opening Brief at 9-10; *see Mayhew*, ECF No. 17, at *4-10. Indeed, as discussed in the Opening Brief, Courts throughout the Country have routinely found this *very same FSC* to be valid and enforceable. Opening Brief at 14-15.

[9] As noted above, Plaintiff signed the Agreement *three* times, and certified on each occasion that he had read and understood the terms of the Agreement, and had the opportunity to consult with counsel.

inconveniences bear no weight" in the Court's analysis. *Amyndas Pharms., S.A.*, 48 F.4th at 35; *Bremen*, 407 U.S. at 16-17 ("where it can be said with reasonable assurance that at the time they entered the contract, the parties to a freely negotiated [agreement] contemplated the claimed inconvenience, it is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable").

Also, as this Court noted in *Mayhew* and *Campinell*, the Northern District of Illinois is "undoubtedly capable of applying Maine law." Opening Brief at 14. "Mere differences in procedures or limitations on remedies, unless they effectively deprive the complaining party of any remedy at all, will not render a designated forum unreasonable." *Amyndas Pharms., S.A.*, 48 F.4th at 34. While litigating in Illinois may add some inconvenience or cost, Plaintiff has not shown that he "will be denied [his] day in court there."[10] *Id.*

## II.    THE ISSUE SHOULD NOT BE CERTIFIED FOR APPEAL

The issue should not be certified for appeal. Interlocutory certification under 28 U.S.C. § 1292(b) "should be used sparingly and only in exceptional circumstances, and where the proposed intermediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority." *Caraballo-Seda v. Municipality Of Hormigueros*, 395 F.3d 7, 9 (1st Cir. 2005); *Camacho v. Puerto Rico Ports Auth.*, 369 F.3d 570, 573 (1st Cir. 2004). Plaintiff claims there are "substantial grounds for difference of opinion . . . on the enforceability of FSCs in Title VII cases" (Opp. at 27), but his position has been rejected by both the First Circuit and this Court.

### CONCLUSION

The Court should thus dismiss or transfer to the Northern District of Illinois.

---

[10] Further, why Plaintiff would have to retain new counsel to litigate in Illinois is unclear. His present counsel can no doubt easily secure *pro hac vice* admission and affiliate with a local firm if necessary.

7

Dated: April 17, 2026

Respectfully submitted,
SEYFARTH SHAW LLP


By: /s/ *Hillary J. Massey*
    Hillary J. Massey (Maine 004449)
    hmassey@seyfarth.com
    Anthony Califano (*pro hac vice)*
    acalifano@seyfarth.com
    Christopher Kelleher (*pro hac vice)*
    ckelleher@seyfarth.com
    SEYFARTH SHAW LLP
    Seaport East
    Two Seaport Lane, Suite 1200
    Boston, Massachusetts  02210-2028
    Telephone:  (617) 946-4800
    Facsimile:  (617) 946-4801


Attorneys for Defendant
ABBOTT LABORATORIES, INC.

8

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 17, 2026, this document filed through the Court's electronic filing system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Hillary J. Massey*
Hillary J. Massey
