UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

SAMUEL M. LUZINGU,                   )
                                     )
            Plaintiff                )
                                     )
     v.                              )          No. 2:25-cv-00523-LEW
                                     )
ABBOTT LABORATORIES, INC.,           )
                                     )
            Defendant                )

**ORDER ON DEFENDANT'S MOTION TO DISMISS OR TRANSFER**

Plaintiff Samuel Luzingu filed this lawsuit against his former employer, Defendant Abbott Laboratories, Inc., alleging that the termination of his employment violated 42 U.S.C. § 1981, Title VII of the Civil Rights Act, the Maine Human Rights Act, and the Maine Whistleblower Protection Act. The matter is before the Court on Defendant's Motion to Dismiss or, in the Alternative, to Transfer Venue (ECF No. 7).

**BACKGROUND**

Plaintiff came to Maine from Angola in 2016, following persecution based on his work as a Christian pastor. Compl. ¶ 1 (ECF No. 1). He took a position as a Production Group Leader at Defendant's facilities in Westbrook and Scarborough, Maine, in November 2019. *Id*. ¶ 2. In April 2022, Defendant terminated his employment. *Id*. ¶ 28. Plaintiff alleges that Defendant discriminated against him on the basis of his race in the course of his employment and termination. *Id*. ¶¶ 87, 90. He also alleges that Defendant retaliated against him after he engaged in protected conduct by making a scheduling

decision that accommodated the needs of his Muslim subordinates during Ramadan. *Id*. ¶¶ 88, 89.

The matter is currently before the Court because Plaintiff electronically signed Defendant's Employee Agreement as a precondition to his employment, and the Agreement contains a forum-selection clause stating that only the federal and state courts of Illinois will have jurisdiction to hear Plaintiff's claims. *See* Decl. of Erika Douglass ¶¶ 6-13 (ECF No. 7-1). Defendant requests with its pending motion that the Court dismiss the case because it was filed in this District contrary to the terms of the parties' Agreement.

### Material Contract Provisions

The Forum-Selection Clause provides as follows:

> The parties agree to the exclusive jurisdiction of the state and federal courts in Illinois, in any action or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby, and further irrevocably agree that all claims in any such action or proceeding shall be heard and determined in Lake County, Illinois state court or the Northern District of Illinois federal court. Both parties waive any objection to the laying of venue of any such action or proceeding in any of the Lake County, Illinois state courts or Northern District of Illinois federal courts, as well as any claim that a party may have that any such action or proceeding has been brought in an inconvenient forum. EMPLOYEE stipulates and consents to Illinois courts' personal jurisdiction and waives the right to object to an Illinois court's jurisdiction.

Employee Agreement § 16(a), Ex. 1 to Douglass Decl. (ECF No. 7-1).

Three other clauses in the Employment Agreement are relevant to this background statement, one entitled Choice of Law, another entitled Waiver, and a third entitled Modification and Severability. The Choice of Law Clause provides that the Agreement "shall be construed, and its enforceability and the relationship of the parties shall be

determined, in all respect under the laws of Illinois, without giving effect to conflict of laws." *Id*. § 15.  The Waiver Clause states:

> The failure or refusal by ABBOTT either to insist upon the strict performance of any provision of this Agreement or to exercise any right in any one or more instances or circumstances shall not be construed as a waiver or relinquishment of such provision or right, nor shall such failure or refusal be deemed a custom or practice contrary to such provision or right of this Agreement. ABBOTT has the right to waive the enforcement of any provision(s) in this Agreement, as well as modify, change, clarify or interpret the Agreement in its sole discretion but such waiver must be in writing and signed by an ABBOTT Corporate Officer or his/her delegate to be valid.

*Id.* § 19.  The Modification and Severability Clause reads:

> **Modification and Severability.** If any provision or provisions (or portions thereof) of this Agreement are held to be unreasonable or unenforceable by any court, then the parties acknowledge and agree that a court may modify any unreasonable or unenforceable provision or provisions (or portions thereof) to make it reasonable and enforceable or enforce it only to the extent it is reasonable and enforceable, to the maximum amount allowed by law to protect ABBOTT's legitimate business interests.
>
> The provisions of this Agreement are severable, and to the extent that any illegal or unenforceable provision of this Agreement cannot be cured by reformation, then such offending portion or language shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and be enforceable.

*Id*. § 14.

### Facts Particular to Plaintiff's Individual Circumstances

Plaintiff attests that he has "a theological certificate in Biblical Studies from Tiranis School of Theology in Angola and [is] currently pursuing an online master's degree at Rhema Bible Training College" in Oklahoma.  Decl. of Samuel M. Luzingu ¶ 6 (ECF No. 18-1).  Although classes at the former institution would be taught in Portuguese, classes at the latter are taught in English.  Plaintiff has been a student of the English language since

at least 2017.  *Id.* ¶ 15.  However, Plaintiff evidently preaches in French and relies on a translator to relay his words to English-speaking members of the congregation.  *Id.* ¶ 33.

Plaintiff concedes that he signed the Employee Agreement.  However, he avers that he "was never presented with a physical copy nor offered the opportunity to discuss its terms with a representative from Abbott."  *Id.* ¶ 25.  Plaintiff maintains that Defendant knew he was an immigrant with "limited English proficiency . . . based on [his] employment application documents, [his] work authorization, and [his] experience as a worker on the factory floor."  *Id.*  When the opportunity to advance to a supervisory role arose, Defendant's human resources officer told Plaintiff that he had to sign the Employee Agreement or he would not receive the position.  *Id.* ¶ 26. He acknowledges that he had some time to review it, but states that he was expected to "return the Employee Agreement quickly so that [his] new employment could be processed."  *Id.*  Between taking the supervisory position and his termination, moreover, Plaintiff had three occasions to sign the Employee Agreement.  *Id.* ¶ 27.  Each occasion in which he signed the Employee Agreement involved a process of opening the document itself, though all that was needed to "sign" were two mouse clicks.  *Id.* ¶ 28.  Plaintiff also acknowledges taking some time to read through the Employee Agreement but maintains that he understood little of its contents.  *Id.* ¶ 29.

Since living in Maine, Plaintiff has been stopped twice by Immigration and Customs Enforcement officers but he was allowed to continue on his way upon presenting papers for their review.  *Id.* ¶ 39.  Plaintiff expresses fear at the prospect of travelling to Illinois because of the possibility he could experience trouble with ICE.  *Id.* ¶ 40.  Plaintiff states

that his parishioners depend on him to be a resource to them in part because of recent increase in immigration enforcement in Maine and elsewhere. *Id.* ¶¶ 41-42. So great are his concerns for his parishioners and his pastoral duties that Plaintiff states he would suffer severe emotional distress if he is forced to pursue litigation in Illinois. *Id.* ¶¶ 46-47. Plaintiff also states that his finances are insufficient to adequately pursue justice in Illinois. *Id.* ¶¶ 50-51.

## DISCUSSION

"Where, as here, a federal court is asked to enforce a forum-selection clause, federal common law supplies the rules of decision." *Amyndas Pharm., S.A. v. New Zealand Pharma A/S*, 48 F.4th 18, 31 (1st Cir. 2022). The First Circuit has outlined a three-step inquiry to aid District Courts in determining the applicability and enforceability of a forum-selection clause, which requires that I consider: (1) whether the clause is permissive or mandatory, (2) whether Plaintiff's claims fall within the scope of the forum-selection clause, and (3) whether the presumption that the clause is enforceable should apply. *See Claudio-De León v. Sistema Universitario Ana G. Méndez*, 775 F.3d 41, 46-49 (1st Cir. 2014). "A forum selection clause is 'prima facie valid' and, absent a 'strong showing' by the resisting party that the clause is 'unreasonable under the circumstances,' it should not be set aside." *Claudio-De León*, 775 F.3d at 48 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15 (1972)). It is nonetheless appropriate to decline to enforce a forum-selection clause where (1) it is the product of "fraud or overreaching," (2) its enforcement "would be unreasonable and unjust," (3) transfer would "contravene a strong public policy of the forum in which suit is brought," or (4) proceeding in the transferee forum would be

5

"so gravely difficult and inconvenient" that the resisting party would "for all practical purposes be deprived of his day in court." *Amyndas Pharm.*, 48 F.4th at 33 (citing *Bremen*, 407 U.S. at 15) (hereafter, "*Bremen* factors"). [1]

Plaintiff does not resist Defendant's arguments that the Forum-Selection Clause in his Employee Agreement is mandatory. Nor does he dispute that the claims he advances in this action come within the scope of the forum-selection clause. Instead, Plaintiff contends that enforcing the Forum-Selection Clause would be unreasonable under the circumstances, considering the four *Bremen* factors. In support of his position, Plaintiff foremost relies on his status as a Christian pastor. According to Plaintiff, he is needed by his parishioners and enforcement of the forum selection clause would deprive him and his parishioners of their religious freedom. Plaintiff supplements this position by arguing that enforcement would contravene Maine law or policy, enshrined in the Maine Civil Rights Act, which protects the free exercise of religion, because the forum selection clause can be selective in its application by virtue of Defendant's ability to waive its application or modify its terms. Plaintiff next argues that enforcement of the clause would contravene a congressional policy embodied by Title VII, which ostensibly seeks to ensure that "private attorneys general" can enforce its provisions wherever workplace discrimination is found. Plaintiff's third challenge asserts that the clause is the product of overreaching because it is procedurally and substantively unconscionable. Plaintiff's fourth challenge is that

---

[1] Plaintiff begins his Objection to Defendant's Motion by asserting that Defendant has waived enforcement of the forum-selection clause because the Motion to Dismiss did not brief the four *Bremen* factors and the factors cannot be addressed for the first time in a reply brief. Obj. at 1, 3. However, as stated in *Claudio-De León*, the burden is initially placed on the party resisting dismissal or transfer to make a strong showing on the *Bremen* factors. 775 F.3d at 48 (quoting *Bremen*, 407 U.S. at 10, 15).

enforcement of the clause would deprive him of his day in court based on the grave difficulty and inconvenience he would experience if forced to pursue his case in Illinois. Finally, Plaintiff argues that the entire Employee Agreement is unenforceable because it is rendered illusory by Defendant's reservation of the right to waive the enforcement of its provisions or to modify them in its sole discretion. Should I conclude that these arguments do not carry the day, Plaintiff requests that I transfer the case rather than dismiss it.

## A.    Freedom of Religious Exercise

Plaintiff argues that transfer would be unfair, unjust, and against public policies that favor the free exercise of religion and nondiscrimination. As alleged, Plaintiff is "the sole pastor at his church" and "leads three services per week." Compl. ¶ 84(c). Because of his religious calling and his duties, he maintains, "[t]raveling to Illinois for a deposition or trial would make it far more difficult for him to fulfill his pastoral duties than if the deposition or trial occurred in Maine." *Id.*

I am not persuaded that Plaintiff's religious practices and duties as a pastor justify giving him a special dispensation to avoid application of the Forum-Selection Clause of the Employee Agreement that he acknowledges signing as a precondition to his promotion to a supervisory position. And as for the burden itself, assuming that a special dispensation might be appropriate based on individual needs pertaining to the inconvenience of a particular forum, the Defendant has indicated that Plaintiff's deposition will take place in Maine. Moreover, Defendant fairly observes that a trial in Illinois should take only a few days and that telecommunications technology enables Plaintiff to remain connected to his parishioners when court is not in session. I agree with Defendant that the limited time

7

required to conduct a trial of this case in Illinois will not unduly disrupt Plaintiff's religious observance, even if religious observance is a proper basis to nullify the consequences of a forum-selection clause.

As for Maine law or policy concerning discrimination based on religion, it is unreasonable to suspect that Defendant is enforcing the Forum-Selection Clause against Plaintiff in a selective manner based on the burden that litigation in Illinois would impose on his pastoral duties. Defendant has similarly moved to enforce its forum-selection clause in cases brought by plaintiffs who do not point to their religious practice as cause to avoid the consequences of the Forum-Selection Clause. In any event, Plaintiff has not identified in Maine law a strong public policy that individuals should be spared the ordinary burdens of contract compliance in matters involving, for example, forum selection or mandatory arbitration because of a temporary interruption in their religious practices. That is particularly the case where, as here, Plaintiff has not shown that his claim under the Maine Human Rights Act would be negated by the parties' Agreement in the context of litigation in the District of Illinois, or even that there is a part of his claim under the Maine Human Rights Act that is broader than what would be available in the District of Illinois or the Seventh Circuit on his Title VII claim. *See Huffington v. T.C. Group, LLC*, 637 F.3d 18, 25 (1st Cir. 2011) ("[T]he outcome *might* be different if Delaware were likely to substitute a substantially less powerful remedy in the teeth of a strong Massachusetts policy." (emphasis in original)).

In summary, Plaintiff's faith-based arguments constitute neither a strong showing of unreasonableness nor a showing that a strong public policy will be contravened for purposes of *Bremen*.[2]

## B.    Private Attorney General

Plaintiff argues that Title VII's jurisdiction and venue provision, codified at 42 U.S.C. § 2000e-5(f)(3), creates a policy that favors "full and easy redress of civil rights grievances," *Passatino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 504 (9th Cir. 2000), by giving priority to the plaintiff's choice of venue.  Plaintiff asserts that through Title VII Congress dubbed him and others like him "private attorneys general" with authority to pursue the eradication of workplace discrimination wherever it is encountered and where related administrative procedures are necessarily exhausted.  Obj. at 3-4.

The jurisdiction and venue provision of Title VII states:

Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction over actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of title 28, the judicial district

---

[2] Plaintiff also contends that he presents an especially strong showing that enforcement of the forum-selection clause is unreasonable and unjust because he "took action to oppose Abbott's discrimination against many more Mainers, beyond himself," such that "Mainers have a public interest not only in holding Abbott accountable for its retaliation and discrimination against Mr. Luzingu, but also in ensuring Abbott reasonably accommodates all its employees' religious practices." Obj. at 14.  I am not persuaded that it is appropriate for the Court to impose a sliding scale that upholds some forum-selection clauses but not others based on a judicial assessment of the scope or nature of the plaintiff's cause.

> in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

42 U.S.C. § 2000e-5(f)(3).  The provision confers jurisdiction on this Court and others and points to Maine as an appropriate, if not presumptive venue, since Maine is the judicial district in which the unlawful employment practice allegedly occurred.

But does § 2000e-5(f)(3) of its own force override employment contracts with forum-selection clauses?  Courts that have considered the question have reached different conclusions.  As I wrote in *Campinell v. Abbott Laboratories, Inc.*, No. 2:25-cv-00072, 2026 WL 323157, at *6 (D. Me. Feb. 6, 2026), and *Mayhew v. Abbott Laboratories*, *Inc.*, No. 2:25-cv-00076, 2026 WL 323175, at *6 (D. Me. Feb. 6, 2026), the First Circuit has not yet weighed in, although it has upheld the enforcement of forum-selection clauses in other Title VII actions.  *See*, *e.g.*, *Claudio-De León*, 775 F.3d at 45 (enforcing forum-selection clause in a case involving "Title VII pregnancy and sex discrimination claims"); *see also cf. Rosenberg v. Merrill Lynch*, *Pierce, Fenner & Smith*, *Inc.*, 170 F.3d 1, 9-12 (1st Cir. 1999) (observing that Title VII's ability to override a pre-dispute arbitration agreement on "policy" grounds requires identification of clear statutory language evincing the intent to preclude such agreements and finding no such language in the Act).

As I concluded in *Campinell* and *Mayhew*, access to a federal forum is stated as a congressional policy in this provision, but access to an appropriate federal forum is achieved here even if the Forum-Selection Clause is enforced, since the Northern District of Illinois is the location of Defendant's principal office and a place where relevant employment records are maintained and administered. *See* Douglass Decl. ¶ 3. Furthermore, while Congress identified the workplace district as a proper venue and

ensured that the United States District Court in that district would have jurisdiction, Congress did not express a "strong public policy" of invalidating forum-selection clauses. Congress only authorized jurisdiction and identified, or ranked, the presumptive, natural venues for actions arising under Title VII.

When it comes to *judicial* policymaking in the absence of a clear and strong policy directive voiced by Congress, as a matter of federal common law the "enforceability of forum selection clauses reflects a strong federal public policy of its own." *Martinez v. Bloomberg LP*, 740 F.3d 211, 218 (2d Cir. 2014). If the Forum-Selection Clause at issue here specified a forum having no connection to the events or the parties (*i.e.*, a venue other than one itemized under Title VII), then I would be more inclined to find the required contravention of a presumed strong policy preference. But that is not the case here. For these reasons, I agree with those jurists who have concluded that § 2000e-5(f)(3) does not invalidate an otherwise enforceable forum-selection clause. *See*, *e.g.*, *Haywood v. ComTec Info. Sys.*, No. 25-cv-7883, 2025 WL 2930752, at *4 (N.D. Ill. Oct. 15, 2025); *Barnes v. Fisher & Co., Inc.*, No. 3:19-cv-224, 2020 WL 8714821, at *4 (S.D. Ind. May 18, 2020); *Kessler v. Direct Consulting Associates LLC*, No. 17-cv-11943, 2018 WL 7890862, at *7 (E.D. Mich. July 6, 2018).

## C.    Unconscionability

Plaintiff contends that the forum-selection clause is overreaching to the point of unconscionability. In Plaintiff's view, use of legal jargon like "exclusive jurisdiction" and "laying of venue" constitutes overreaching because it is difficult to understand, especially for persons not accustomed to legal terminology or, for that matter, English. Obj. at 4, 8,

14-19. Plaintiff divides his argument into procedural and substantive contentions, arguing that the clause lacks consideration, is a "sharp practice," uses convoluted language buried in fine print, and was imposed in a take-it-or-leave-it fashion. *Id.* at 15-16. According to Plaintiff, he is the victim of "an enormous power imbalance" that will have the effect of depriving him of the ability to enforce his statutory rights. *Id.* at 16. He emphasizes his status as a recent immigrant with limited English language skills but also notes that employment with Defendant gave him "his best chance at supporting his family and his church while navigating the United States' complex immigration system." *Id.* at 17. He observes that he signed the Employment Agreement electronically, without reviewing a paper copy, and allegedly under pressure, arguing that the circumstances would support a finding that he was "manipulated" to sign. *Id.* at 18. As for substantive unconscionability, Plaintiff argues that the Forum-Selection Clause is so one-sided as to amount to oppression. *Id.* He also argues that unfairness is embodied in what he calls Defendant's "free[dom] to escape the requirements of the [clause] whenever convenient." *Id.* at 19. In support of these arguments, Plaintiff chiefly cites Illinois cases, because the Employee Agreement specifies that it "shall be construed, and its enforceability and the relationship of the parties shall be determined, in all respect under the laws of Illinois." Employee Agreement § 15.

I am not persuaded by Plaintiff's unconscionability arguments. Under Illinois law, procedural unconscionability "refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it, and also takes into account a lack of bargaining power." *Razor v. Hyundai Motor America,* 854 N.E.2d 607, 622 (Ill. 2006). The Employee Agreement by any objective

measure is relatively straightforward and comprehensible. The forum-selection clause is not buried in fine print but rather is drawn out in equal font alongside the Agreement's other clauses, all of which bear relatively easy-to-follow headings. Although there are some legalisms in the text, it would be difficult to articulate why this particular Agreement would be unconscionable whereas a typical employment contract would not be. In this sense, Plaintiff essentially argues that a forum-selection clause that uses necessary terms like "jurisdiction" and "venue" is unconscionable in an employment contract unless the employee has legal training or some comparable level of education and experience. I understand that legal terms can be confusing to those who are unfamiliar with them, but these provisions are far from Byzantine, and they do not involve chicanery or deception. We also live in a time when it is easy to obtain the meaning of common legal terms, including nearly instantaneously online.

In any event, Plaintiff is not unsophisticated. He is trained in the gospels and preaches their meaning to his parishioners. He appears to be conversant, if not fluent, in multiple languages. And under Illinois law, he had a positive duty to read, learn, and know the contents of a written contract that he signed. *Nilsson v. NBD Bank of Illinois*, 731 N.E.2d 774, 783 (Ill. 1999). Plaintiff's own declaration reveals that he had at least three occasions to read the Employee Agreement. And accepting that the terms of the Employee Agreement were presented as "take-it-or-leave-it," Plaintiff received notice in writing and he did actually have the choice to leave it. "Illinois courts regularly uphold such contracts as 'a fact of modern life.'" *Thakkar v. ProctorU Inc.*, 571 F. Supp. 3d 927, 935 (C.D. Ill. 2021). *See also Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 367 (7th Cir. 1999)

13

("Illinois law does not void contracts where parties have unequal bargaining power, even if . . . 'consent to [the] agreement is secured because of hard bargaining positions or the pressure of financial circumstances.'" (quoting *Kewanee Production Credit Association v. G. Larson & Sons Farms, Inc.*, 496 N.E.2d 531, 534 (Ill. App. 1986)). Nor is the "clickwrap" nature of the Employee Agreement an unconscionable feature. "[S]uch agreements are regularly upheld and enforced." *Id.* Finally, Plaintiff's presumed inability to negotiate for the exclusion of the clause is not unconscionable in Illinois absent "some fraud or similar wrongdoing," which is not evident in this case. *Williams v. Jo-Carroll Energy, Inc.*, 890 N.E.2d 566, 571 (Ill. App. 2008).

In terms of substantive unconscionability, this concept involves "terms which are inordinately one-sided in one party's favor." *Razor*, 854 N.E.2d at 622. In fact, there is mutuality in the Forum-Selection Clause. Both parties are bound by it unless, for some reason, they should agree to waive its application. I discuss this at greater length, below, in the context of Plaintiff's argument that the Employee Agreement is illusory. But the essence of my conclusion as to this point is that any unilateral step taken by Defendant to waive, modify, or change the Forum-Selection Clause could only ever operate prospectively and on notice following issuance of a signed, written amendment to that effect. Moreover, Illinois courts do not set aside forum-selection clauses absent oppressiveness or unfair surprise. *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 267 (Ill. App. 2006). In other words, forum-selection clauses are not inherently oppressive. To rise to that level, one would need to include terms designed to oppress such as, for example, a provision that also negates remedies for generally applicable legal violations such as

14

federal and state antidiscrimination laws. A review of the Forum-Selection Clause (or the Choice of Law Clause) does not suggest that Defendant has attempted to deprive Plaintiff of any of his claims or requested remedies. Given the standard nature of this Forum-Selection Clause, well labeled and clearly stated on the face of the contract, there is no reason to find unconscionable oppression or surprise.

## D.    Grave Difficulty and Inconvenience

Plaintiff argues that being forced to litigate this case in Illinois would effectively deprive him of his day in court. In support, he argues that both the emotional and the financial toll of litigating in another state are too much for him. Plaintiff's protests do not amount to a showing of grave difficulty or inconvenience tantamount to the practical denial of his day in court. *Amyndas Pharm.*, 48 F.4th at 33. The plaintiffs' bar in Chicago no doubt includes attorneys who would be enthusiastic to champion Plaintiff's cause or help Plaintiff's current counsel to do so. The rules and procedures that will be applied by a federal court in Illinois will be familiar if Plaintiff's current counsel keeps the case. There is no reason to think that Plaintiff would be subject to any local prejudices in Illinois in terms of the jury pool. Nor is it apparent that Plaintiff's case imposes a substantial financial burden that contingent-fee counsel would be unwilling to assist with, particularly as discovery proceedings will look much if not entirely the same in either forum. Plaintiff's arguments concern the ordinary toll associated with travel in support of litigation, which do not suffice as "grave." *Atlas Glass & Mirror*, *Inc. v. Tri-N. Builders*, *Inc.*, 997 F.3d 367, 376 (1st Cir. 2021). This leaves individual considerations related to Plaintiff's religious practice and immigration status. Ultimately, I am unpersuaded that these

considerations can fairly be leveraged to favor Plaintiff as compared to any other employee of Defendant who could not claim a special status based on religious practice or ethnicity or immigration status. The import here is that Plaintiff should be treated like any other employee in his position, not that he should be favored based on his identity. For these reasons, Plaintiff's difficulty and inconvenience arguments fail.

## E.     Illusory Contract

Plaintiff argues that the Employee Agreement is illusory and therefore unenforceable as a result of its Waiver Clause. Obj. at 4, 21-26. According to Plaintiff, "in addition to failing under *Bremen*, the Forum-Selection Clause is also unenforceable because Abbott's reservation of the right to 'change' the Agreement renders all its promises in the Agreement illusory, and thus no contract was formed in the first place." *Id.* at 4. I repeat the language of the clause for ease of reference:

> The failure or refusal by ABBOTT either to insist upon the strict performance of any provision of this Agreement or to exercise any right in any one or more instances or circumstances shall not be construed as a waiver or relinquishment of such provision or right, nor shall such failure or refusal be deemed a custom or practice contrary to such provision or right of this Agreement. ABBOTT has the right to waive the enforcement of any provision(s) in this Agreement, as well as modify, change, clarify or interpret the Agreement in its sole discretion but such waiver must be in writing and signed by an ABBOTT Corporate Officer or his/her delegate to be valid.

*Id.* § 19. Plaintiff construes Defendant's reservation of the right to waive enforcement of any provision or modify any provision in its sole discretion as violative of a cardinal rule of contract formation: lack of consideration. Obj. at 22 (citing *Canales v. Univ. of Phoenix, Inc.*, 854 F. Supp. 2d 119, 124-25 (D. Me. 2012) and *Snow v. BE & K Const. Co.*, 126 F.

16

Supp. 2d 5, 15 (D. Me. 2001)).  Plaintiff cites Maine authority rather than Illinois authority because his challenge concerns the initial formation of a contract of employment in Maine.

The plaintiffs in *Mayhew* and *Campinell* raised similar arguments.  Based on my reading of the Waiver Clause, I ruled in those cases that the Waiver Clause is not drawn to relieve Defendant of disadvantageous terms or obligations set out in the Employee Agreement but rather to enable Defendant to waive Plaintiff's performance obligations. *Mayhew*, 2026 WL 323175, at *3; *Campinell*, 2026 WL 323157, at *3.  Plaintiff argues that such a construction makes the Waiver Clause superfluous because Defendant does not need to express such a right in the contract and can always waive Plaintiff's performance should it desire to do so.  Obj. at 23.  Plaintiff says the Court should avoid making the Waiver Clause or any part of it superfluous.  Yet the provision is not superfluous because it conveys the point that if Defendant were ever to waive performance of a provision it would not mean that the provision could not be enforced in the future in a different situation.   In this sense, the Waiver Clause serves as a kind of plain language prohibition against contract amendment or estoppel based on Defendant's waiver of performance in a given instance.

Plaintiff next argues that the principle of *contra preferentum*, which construes a disputed phrase against its drafter, Black's Law Dictionary, p. 327 (6th Ed.), compels a construction that will void the entire Employee Agreement.  As an initial matter, the *contra preferentum* principle only applies to resolve ambiguity in a contract—a precondition that I am not persuaded has been met here.  But additionally, I am unaware of any contract principle that would call on a Court to interpret an entire contract as illusory when its

17

meaning is subject to reasonable and definite construction.  Courts ordinarily do not *void* contracts based on ambiguity.  They *construe* terms and enforce them accordingly, to meet reasonable expectations, even when the construction favors the non-drafting party.  *See, e.g., Gove v. Career Sys. Dev. Corp.*, 689 F.3d 1, 4-5 (1st Cir. 2012).  Under Maine law, a contract "is to be interpreted to effect the parties' intentions as reflected in the written instrument, construed with regard to subject matter, motive, and purpose of the agreement, as well as the object to be accomplished." *Biddeford Internet Corp. v. Verizon New England Inc.,* 456 F. Supp. 2d 165, 171–72 (D. Me. 2006) (quoting *V.I.P., Inc. v. First Tree Dev. LLC*, 770 A.2d 95, 96 (Me. 2001)).  Avoidance of the entire contract is not a reasonable construction.  In any event, the Waiver Clause is not ambiguous.  Its meaning is plain and its language would be subject to ready application in the context of a case presenting the circumstances it is actually drawn to address, which circumstances are not in play in this case, since Defendant has not waived Plaintiff's obligation to perform any part of the Employee Agreement.

Plaintiff next argues that the Waiver Clause renders the Employee Agreement illusory because, in addition to the waiver language, it gives Defendant "sole discretion" to "modify, change, clarify or interpret the Agreement" (in writing) and does not state that the modification of a provision would only bind an employee prospectively after an opportunity for the employee to accept or reject the modification by either continuing to work or resigning. Obj. at 24-25.  With this argument, Plaintiff relies on a statement of the law of illusory contracts found in *Canales v. University of Phoenix*, 854 F. Supp. 2d 119

18

(D. Me. 2012), which draws on an earlier articulation found in *Snow v. BE & K Const. Co.*, 126 F. Supp. 2d 5, 15 (D. Me. 2001).

As for *Snow*, the earlier of the two cases, the facts are readily distinguishable. The plaintiff in *Snow* (hereafter "Snow") never signed an employment contract. Nor did Snow ever sign off on the contents of the "Employee Solution Program" that her employer introduced one day by circulating a booklet purporting to make mediation and arbitration the exclusive final dispute resolution procedures for all employment disputes. 126 F. Supp. 2d at 8. The booklet included language stating that it was not an "employee agreement" and that the employer "reserve[d] the right to modify or discontinue th[e] program at any time." *Id.* at 9. Given these critical facts, Judge Singal concluded that the Employee Solution Program could not be considered a binding contract because the employer's freedom to discontinue the program at any time was not a promise that it would actually perform the Employee Solution Program in exchange for its employees' continuation of employment, which Judge Singal described as an illusory promise incapable of constituting consideration for purposes of a unilateral contract. *Id.* at 10.

In explanation, Judge Singal observed: "A manifestation of mutual assent, either express or implied, is not immediately apparent in this case. Plaintiff never signed anything expressing assent to the booklet." *Id.* at 13. Because there was no manifestation of assent on the part of Snow, the Court considered whether a contract was nonetheless formed based on Snow's continued performance of her job in exchange for any promise on the part of the employer. *Id.* If so, "[t]he exchange of promise for performance [would have] demonstrate[d] the requisite manifestation of mutual assent." *Id.* (citing Restatement

19

(Second) of Contracts § 18).  Because the employer stated that the Employee Solution Program was not itself an employee agreement and also reserved the right to cancel the Employee Solution Program at any time, Judge Singal concluded that the employer had neglected to promise anything in return for Snow's continued performance of her job.  In Judge Singal's view, the reserved right in *Snow* amounted to a "broad disclaimer clause" that made the case an outlier and brought it into a disfavored category in which a promising party reserves "an *unlimited* right to determine the nature and extent of [its] performance." *Id.* at 14 (collecting authorities and quoting *Corthell v. Summit Thread Co.,* 132 Me. 94, 167 A. 79, 81 (1933) (emphasis in original)).  In concluding comments, Judge Singal reiterated the fact that the employer never bothered to ask Snow to demonstrate her mutual assent with her signature.  *Id.* at 15 ("Because of the lack of consideration and the lack of a manifestation of mutual assent, no contract exists between the parties . . . .").

I do not see in *Snow* any reason to void Defendant's Employee Agreement.  Unlike in *Snow*, Defendant's reservation of a right to modify the terms of employment involved a process in which Plaintiff was asked to review and sign, which he did, three times, meaning the process bears the hallmark of mutual assent to be bound. Additionally, the circumstances involved a promise of promotion, which was in fact awarded in exchange for Plaintiff's agreement to be bound.  Consideration is plain on these facts.  The reservation of a right to modify in this case, moreover, is not fairly characterized as a "broad disclaimer clause" rather than a garden-variety modification clause expressing the fact that—as in all at-will employment contexts—the terms of employment are dictated by the

20

employer and subject to change on notice.[3]  That leaves *Canales* as the only precedent in this District that might support Plaintiff's argument.  It, too, is distinguishable.

In *Canales*, the plaintiff ("Canales") signed an acknowledgement of an employee handbook that contained an arbitration agreement.  854 F. Supp. 2d at 123.  Moreover, the employer never "disavowed the binding nature of the arbitration agreement."  *Id.*  Thus, *Canales*, unlike *Snow*, presented a mutual assent fact pattern and, at least procedurally, a less strident position taken by the employer concerning the "at any time" language, suggesting that the employer of Canales, unlike the employer of Snow, was not, in the words of Judge Singal, trying to "have its cake and eat it too."  *Snow*, 126 F. Supp. 2d at 15.  Despite these significant distinctions, Judge Woodcock ruled that Canales was not bound by his agreement to arbitrate disputes because the handbook included a "Forward" stating that "[t]he policies set forth within may be changed or eliminated as deemed necessary by the Company at any time" and concluded with a statement of "Employee Responsibility and Acknowledgement" which read, "Revisions or exceptions to the policy can only occur if in writing and approved by the President of Apollo Group, Inc."  *Id.*; *see also Canales v. Univ. of Phoenix, Inc.*, 2012 WL 27423, at *1 (D. Me. Jan. 4, 2012) (rejected report and recommendation containing the underlying facts).  In Judge Woodcock's view, the handbook's terms were rendered void because the handbook stated that its terms could be eliminated at any time, when by law the effective date of a change or elimination of terms would need to be preceded not only by a written document approved

---

[3] Adding force to this conclusion are the additional facts that the reservation is found in the Waiver Clause, which speaks in terms of the employees' performance obligations, rather than isolated in the Forum-Selection Clause and without the "at any time" language that strongly suggested in *Snow* that Defendant reserved the right to disclaim its "Solution Program" at its convenience.

by the employer's president, but also by a reasonable period of time in which the employee would be able "to decide whether to continue working under the new provision." *Canales*, 854 F. Supp. 2d at 124. According to Judge Woodcock, the reservation of the unilateral right to change or eliminate terms without notice was the "most salient" factor that made the handbook's terms illusory. *Id.* at 124.

My understanding of contract formation law in Maine is that, where there is mutual assent demonstrated by the employer's specification of employment terms and the employee's acceptance of the terms recorded in a document signed by the employee, and where the reservation of a right to modify terms is not in the form of a broad disclaimer suggesting that the employer has reserved the right to retroactively relieve itself of its own obligations and promises, there is a binding contract. That is in fact the logic of *Snow*, and it is the undercurrent at work in *Canales* as well. And where there is a binding contract, the Court's task is to construe and enforce it according to its express terms, to be modified where necessary by reasonable requirements rather than invalidated altogether. Here, there is clear evidence of an express agreement to be bound by terms subject to reasonable construction, signed by Plaintiff, and supported by consideration in the form of job promotion. Moreover, the allegedly offending qualifier ("sole discretion") pales in comparison to the "at any time" language that served as the linchpin for the outcome in *Canales*. Generally, an employer must afford notice, must avoid retroactive application of a contract amendment, and must afford a reasonable amount of time for its notice of amendment to be accepted by the employee through continued engagement. *See Canales*, 854 F. Supp. 2d at 124 (collecting cases); *see also Carey v. 24 Hour Fitness, USA, Inc.*,

22

669 F.3d 202, 205 (5th Cir. 2012) (emphasizing that invalidation of a contract as illusory should be reserved for cases presenting not merely the omission of advance notice language but also the reservation of "*the ability to amend the agreement retroactively so as to avoid any promise.*" (emphasis in original) (quoting *Torres v. S.G.E. Mgmt., LLC*, 397 Fed. App'x 63, 68 (5th Cir.2010) (unpublished))). Unlike in *Canales*, Defendant here did not use the "at any time" language to suggest that it could "unilaterally change or eliminate the terms of the Employee [Agreement] without any waiting period or notice to the employee." *Canales*, 669 F.3d at 124 (describing this precise characteristic as the "most salient point").

Where, as here, a waiver clause (or similar provision) merely announces the employer's right to modify the terms of employment at the employer's discretion, the term does not render the agreement illusory and the proper approach for a court is to supply a reasonable notice term where none has been stated, rather than invalidate an agreement supported by mutual assent to be bound and consideration. In these circumstances, a notice term can be supplied that conforms to reasonable expectations. *Pelletier v. Pelletier*, 36 A.3d 903, 908 (Me. 2012) ("[L]ack of a key term is not necessarily fatal to the enforcement of a contract, as long as the missing term does not indicate a lack of contractual intent.") [4]; *see also id.* at 909 ("A court may supply a key term missing from a contract using the standard of reasonableness."); *Dairy Farm Leasing Co., Inc. v. Hartley*, 395 A.2d 1135, 1140 n.3 (Me. 1978) ("[W]here a standard-form, printed contract is submitted to the other

---

[4] There was no lack of contractual intent here as, clearly, Defendant retained the right to modify the terms of Plaintiff's at-will employment and the only question is upon what notice. Plaintiff's argument that the "in its sole discretion" language is outrageous is, frankly, outlandish. Obj. at 26. In the at-will-employment context, at who else's discretion would modifications to the terms of employment be made other than the employer?

23

on a 'take it or leave it' basis, upon equitable principles the provisions of the contract are generally construed to meet *the reasonable expectations* of the party in the inferior bargaining position, because the parties are in vastly unequal bargaining positions." (emphasis added)); *Hodgkins v. New England Tel. Co*., 82 F.3d 1226, 1230 (1st Cir. 1996) (applying Maine law in precisely this fashion and noting that courts must be "reluctant to construe a contract so as to render it unenforceable if that result can be avoided" (quoting *Towne v. Larson,* 51 A.2d 51, 53 (1947)).[5]

Plaintiff's attempt to invalidate the Employee Agreement fails.  It fails because the Employee Agreement at issue here is the product of mutual assent and consideration, does not expressly contradict the availability of a reasonable notice provision, unlike the handbook at issue in *Canales*, and does not contain the kind of broad disclaimer clause at issue in *Snow*.[6]

## F.    Transfer or Dismiss

"Although Rule 12(b)(6) remains a proper vehicle to seek enforcement of a forum selection clause in this Circuit, a district court should 'ordinarily' use § 1404(a) to enforce

---

[5] The Employee Agreement does not contain any unconscionable provision.  Still, it is worth noting that even in the context of an unconscionability determination, the standard contract interpretation guidelines do not compel invalidation.  Restatement (Second) of Contracts § 208 ("If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result."); *see also Barrett v. McDonald Investments*, *Inc*., 870 A.2d 146, 155 (Me. 2005) (Alexander, J., concurring) (same).

[6] There exists a further backstop in the Employee Agreement's Modification and Severability Clause, which states that any unreasonable or unenforceable provision will not be enforced by a court and will instead be rendered reasonable or, if a reasonable construction is not available, will be stricken to ensure that the Employee Agreement remains in full force and effect and enforceable.  Although the parties do not reckon with this provision, it, too, militates in favor of the introduction of a reasonable notice term rather than the nullification of the Employee Agreement.

24

a forum-selection clause that identifies a federal forum[.]" *Reynoso v. LaserShip, Inc.*, 322 F. Supp. 3d 211, 215 (D. Mass. 2018) (quoting *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct. for the W.D. of Tex.*, 571 U.S. 49, 62 (2013)). Under that provision, a civil action may be transferred "to any other district or division where it might have been brought or to any district or division to which all parties have consented" "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause" and deny a motion to transfer only "under extraordinary circumstances unrelated to the convenience of the parties." *Atlantic Marine*, 571 U.S. at 62.

Because I have rejected Plaintiff's challenges to the Employee Agreement, and because the Employee Agreement lawfully requires compliance with the Forum-Selection Clause, the question arises whether the appropriate disposition of Defendant's Motion is to dismiss the case or transfer it to the Northern District of Illinois. As indicated, transfer is the ordinary outcome. A transfer is also favored in this case given that Plaintiff has advocated on behalf of a transfer rather than a dismissal and Defendant has not contested the matter in its Reply. Reply at 7 ("The Court should thus dismiss or transfer to the Northern District of Illinois.").

## G.    Appeal Certification

Plaintiff argues that, should the Court grant Defendant's Motion and dismiss or transfer the case, the Court should certify his Title VII argument for interlocutory appeal under 28 U.S.C. § 1292(b). Section 1292 limits the jurisdiction of the courts of appeals

when it comes to interlocutory district court orders. A district court order granting a motion to transfer under 28 U.S.C. § 1404, like this one, is the kind of interlocutory order for which the courts of appeals do not ordinarily have appellate jurisdiction. *Edwards v. First Am. Title Ins. Co. of Nevada*, 19 F.3d 1427 (1st Cir. 1994). However, section 1292 provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b).

Plaintiff argues that whether or not Title VII's jurisdiction and venue provision, 42 U.S.C. § 2000e-5(f)(3), overrides forum-selection clauses as a matter of strong congressional policy is a "controlling question of law as to which there is substantial ground for difference of opinion," and that an interlocutory appeal is warranted to avoid the unnecessary travel of this case to Illinois, where he might ultimately succeed on this issue. Obj. at 27.

The First Circuit has "repeatedly emphasized" that a section 1292(b) certification is reserved for exceptional circumstances and requires that the issue presented be difficult, pivotal, and unsettled. *Caraballo-Seda v. Municipality Of Hormigueros*, 395 F.3d 7, 9 (1st Cir. 2005). I have found Plaintiff's Title VII challenge to the Forum-Selection Clause unpersuasive and doubt that the issue is truly exceptional where, as here, Plaintiff retains his right to pursue his Title VII claim in the Northern District of Illinois. Defendant's request for certification is denied.

CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss or, in the Alternative, to Transfer Venue (ECF No. 7) is GRANTED IN PART and DENIED IN PART.  The motion to dismiss is DENIED.  The motion to transfer is GRANTED.  This matter will be transferred to the United States District Court for the Northern District of Illinois.

SO ORDERED.

Dated this 31st day of July, 2026.

/s/ Lance E. Walker
Chief U.S. District Judge